UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALGONQUIN GAS TRANSMISSION, LLC,
    Plaintiffs

v.

0.247 ACRES OF LAND, MORE OR LESS,
IN LINCOLN, MASSACHUSETTS, and
THE CITY OF CAMBRIDGE,
    Defendants

Civil Action No. 1:24-cv-11220-ADB

**CITY OF CAMBRIDGE'S OPPOSITION TO THE MOTION
TO CONFIRM CONDEMNATION OF EASEMENT AND FOR A
PRELIMINARY INJUNCTION AUTHORIZING IMMEDIATE ENTRY**

The City of Cambridge (Cambridge) OPPOSES Algonquin Gas Transmission, LLC's (Algonquin) *Motion to Confirm Condemnation of Easement and for a Preliminary Injunction Authorizing Immediate Entry* (Motion). The City requests this Court DENY the Motion.

## INTRODUCTION

Algonquin alleges it requires immediate access to a portion of watershed protection land owned by Cambridge and subject to a recorded conservation restriction granted to the Town of Lincoln (Lincoln) (Watershed Land). Exhibit A.[1] Algonquin proposes to use the Watershed Land as a temporary workspace easement (TWS Easement) for petroleum product pipeline maintenance (Project). Prior to initiation of this lawsuit, Algonquin declined to share with Cambridge requested specifics about the TWS Easement, including, but not limited to, the

---

[1] Exhibit A: *Conservation Restriction to Town of Lincoln*, Middlesex South Registry of Deeds, Book 60513, Page 485 (Conservation Restriction).

1

necessity of the size and scope of the TWS Easement and any remediation plan(s) for vegetation and soil restoration. Algonquin further failed to engage in reasonable and meaningful discussion with Cambridge's authorized decision-makers regarding access to the Watershed Land. Instead, Algonquin submitted to Cambridge one written offer, with a six-day deadline to respond, regarding compensation for the TWS Easement. Since filing this lawsuit, Algonquin has shared further details regarding its permitting compliance process and construction plans. Cambridge has learned from these materials that Algonquin does not intend to begin actual site-work until July 8, 2024, and Algonquin has alternate plans indicating it can complete its project with substantially less impact upon the Watershed Land. Exhibits B and C.[2]  Accordingly, Cambridge maintains that an order of condemnation of easement and for preliminary injunction granting immediate access is premature where the parties still have an opportunity to come to an agreement regarding access to and remediation of the Watershed Land. Furthermore, as a matter of law, Algonquin fails to prove it is entitled to such an order.

## ARGUMENT

I. **Algonquin is not entitled, at this time, to an order confirming the taking of the proposed TWS Easement.**

Algonquin's argument for condemnation should fail because it incorrectly asserts that the contemplated temporary taking is a fait accompli.  To prevail in the instant condemnation proceeding, Algonquin, pursuant to 15 U.S.C. §717f(h), and as explained by the Supreme Court's test in PennEast Pipeline Co., LLC v. New Jersey, must (1) obtain a certificate of public convenience and necessity from the Federal Energy Regulatory Commission (FERC) and (2) show that it could not acquire by contract or agreement, guaranteeing just compensation, the proposed temporary taking. 594 U.S. 482, 497 (2021). Algonquin has the necessary FERC

---

[2] Exhibit B: *Construction Schedule*; Exhibit C: *Construction Drawing*.

certificate, but two issues exist to foil Algonquin's planned temporary taking. First, Algonquin neglected to include a necessary party in the lawsuit and the preceding required negotiations, which negotiations did not meaningfully occur in any event. Second, Algonquin prematurely asserts that the City is unwilling to agree to a mutually beneficial settlement.

Failure to include Lincoln in the lawsuit and temporary taking negotiations should be fatal to Algonquin's condemnation and preliminary injunction attempts because Lincoln has a record property interest in the Watershed Land. Exhibit A. Fed. R. Civ. P. 71.1[3] states, in pertinent part, "When the action commences, the plaintiff need join as defendants only those persons who have or claim an interest in the property and whose names are then known." Lincoln's interest in the Watershed Land stems from the Conservation Restriction granted to it by Cambridge, which is memorialized in a document duly recorded, in 2012, at the Middlesex South Registry of Deeds. Exhibit A. The Conservation Restriction, at § VI.A, explicitly "gives rise to a real property right."[4] Importantly, if "any part of the [Watershed Land] is taken by public authority under power of eminent domain…then [Cambridge and Lincoln] shall cooperate in recovering the full value of all direct and consequential damages resulting from such action." Exhibit A, at § VI.D. Thus, Lincoln has a clear interest in the property and Rule 19 exists precisely to protect the interests of parties like Lincoln that are not yet involved in litigation

---

[3] All subsequent references to "Fed. R. Civ. P." appear as "Rule xx."

[4] Furthermore, pertinent to this matter, the Conservation Restriction states, "[a]cts consistent with the pre-existing utility easement of Algonquin" are allowed only insofar as they do not cut, remove, or otherwise destroy "trees, grasses or other vegetation on the [Watershed Land] unless consistent with soil, and habitat conservation practices, watershed management or invasive species control conducted on the [Watershed Land]," are not detrimental to drainage, flood control, water conservation, water quality, erosion control, soil conservation or archaeological conservation, and "1) such acts or uses do not materially impair the conservation interests that are the subject of this Conservation Restriction, and 2) such activities are undertaken in accordance with any laws, rules and regulations associated therewith[.]" Exhibit A, at §§ III.B.4, III.A.4 and 5, and III.B.

involving their interests.[5] Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 25 (1st Cir. 2010). Algonquin's failure to join Lincoln as a party violates its duty to join a party that has an interest in the property and is known to Algonquin. Rule 71.1.[6] To Cambridge's knowledge, Lincoln has not been meaningfully engaged in any discussions regarding the proposed temporary taking nor this condemnation litigation. Accordingly, the motion for condemnation and preliminary injunction should be denied and the action stayed pending notice to Lincoln of the lawsuit and joinder as a party.

Algonquin's argument for condemnation should also fail because it incorrectly asserts that the parties failed to acquire the TWS Easement by contract or agreement. The truth is Cambridge's inquiries about the size and scope of the TWS Easement and any remediation plan(s) for vegetation and soil restoration were not satisfactorily answered by Algonquin. Cambridge could not proceed without answers to these questions without violating Lincoln's property rights and Cambridge's obligations to the over 120,000 people who rely on clean drinking water every day. However, the parties, in fact, are negotiating and Cambridge will continue to do so in the hope that current discussion will prove fruitful and blossom into Cambridge's goals: a reduced TWS Easement and a comprehensive agreed-to remediation plan for the Watershed Land – goals which the documents Algonquin recently disclosed indicate could be achievable. Exhibits B and C. Accordingly, contrary to Algonquin's assertion, the City does not and has not considered the negotiations over. Therefore, Algonquin does not meet the

---

[5] A Rule 19 motion is properly brought via a Rule 12(b)(7) motion. Cambridge has not yet responded to Algonquin's complaint and does not do so here. To the extent it has not already done so, Cambridge explicitly reserves its right to assert a Rule 12(b)(7) defense either in a responsive pleading or motion to dismiss.

[6] Rule 71.1 states in pertinent part, "When the action commences, the plaintiff need join as defendants only those persons who have or claim an interest in the property and whose names are then known."

second prong set forth in the PennEast Pipeline test, and its motion for condemnation and preliminary injunction should be denied.

Alternatively, if this District Court is not inclined to deny the requested relief, then based on Algonquin's proposed construction schedule, Cambridge requests this District Court delay action on the motion for condemnation and preliminary injunction for a reasonable period to allow the parties a meaningful opportunity to forge an agreement regarding the TWS Easement.

**II.     Algonquin is not entitled to a preliminary injunction allowing it to immediately enter the Watershed Land.**

Cambridge agrees with Algonquin that, in the First Circuit, a party seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it will suffer irreparable injury if such equitable relief is not granted; (3) the injury it will suffer if the injunction does not issue outweighs the harm to the nonmovant and (4) the public interest is served by granting the injunction. See e.g., Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). Cambridge disagrees that Algonquin satisfies these requirements and points out that this District Court has wide discretion in determining the appropriateness or not of preliminary injunctive relief. Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). At this stage, for the reasons demonstrated below, Algonquin is not entitled to a preliminary injunction authorizing it to immediately enter the Watershed Land so that it may begin work on the Project.

**1. Algonquin is not likely to prevail on the merits.**

As an initial matter, Algonquin is not likely to prevail on the merits. Likelihood of success on the merits is the necessary threshold to cross to gain an award of preliminary injunctive relief. Id. To that end, Algonquin puts great stock in its argument that the National

Gas Act and the FERC Certificate give it authority to take the TWS Easement rights it seeks.[7] However, to make its temporary taking Algonquin must show that it could not acquire by contract or agreement, guaranteeing just compensation, the proposed temporary taking. PennEast Pipeline, 594 U.S. at 497. For the reasons argued in § I above, this is a showing Algonquin cannot make at this time. Therefore, an award of injunctive relief to Algonquin is not warranted.

2. **Algonquin will not be irreparably injured by the denial of the requested relief.**

On the one hand, Algonquin will not suffer irreparable harm if the requested relief is denied. Work on the Project is scheduled to begin no earlier than July 2024. In the interim, the parties have a reasonable period of time to agree to a reduced TWS Easement and a comprehensive agreed-to remediation plan for the Watershed Land. There should be no cause for concern that these negotiations will delay Algonquin's Project. Furthermore, even if there are delays, any hypothetical damages are easily quantifiable as the difference between projected and actual construction costs. Therefore, an award of injunctive relief to Algonquin is not warranted.

3. **Granting the requested relief will irreparably harm Cambridge.**

On the other hand, if a preliminary injunction were granted it would cause irreparable harm in the form of immediate and continuing debilitation of Cambridge's watershed. This is damage which cannot be repaired with money alone, and "[a]s a general rule, interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute." Pelfresne v. Vill. of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989). Accordingly, this District Court is not required to grant immediate entry and possession to Algonquin where a less damaging form of relief can

---

[7] Interestingly, Algonquin builds its argument on the contention that it is taking conservation land and ignores the fact it seeks to take watershed protection land that happens to also be subject to conservation restrictions. The effect of Algonquin's argument is to diminish the significance of its proposed petroleum product pipeline project in a watershed that serves as the principal water source for over 120,000 people.

be crafted. In fact, the Supreme Court advises "that in choosing between various methods of enforcing Congress's policy choices, discretion [should] be exercised as to 'whether a particular means of enforcing the statute should be chosen over another permissible means.'" Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Rsrv. v. Enbridge Energy Co., Inc., 626 F. Supp. 3d 1030, 1055 (W.D. Wis. 2022) (quoting United States v. Oakland Cannabis Buyers' Co-op, 532 U.S. 483, 497-98 (2001). Here an injunction is not the proper method to achieve Algonquin's goal of beginning the Project. Rather an order requiring Cambridge and Algonquin to agree to an environmental remediation plan by a date certain and to seek further relief if unsuccessful would better serve the public interest.

    4. **The requested relief will harm rather than serve the public interest.**

Contrary to Algonquin's assertion, the public interest is better served ensuring the continued preservation of the Watershed Land. A construction delay that might result in a temporary delay of additional gas supply is nothing in comparison to long term degradation of a major municipal water supply and mature forested watershed protection land. Looking to the future, fossil fuels will hopefully become a de minimis contribution to the energy environment and petroleum product pipelines will be infrastructure dinosaurs dug from the land and displayed in museums. However, the need for clean, fresh drinking water will never evaporate and Cambridge has a duty to ensure the Watershed Land can continue generating this precious natural resource for the public good.

[*continued on following page*]

## CONCLUSION

Wherefore, Cambridge requests this District Court DENY Algonquin's motion and grant such other relief as is just and proper.

Respectfully submitted,

Defendant City of Cambridge,
By its attorney,

/s/ Franziskus Lepionka
Franziskus Lepionka, Esq.
B.B.O. #664049
City of Cambridge Law Department
City Hall, 795 Massachusetts Ave.
Cambridge, MA 02139
(617)-349-4121
flepionka@cambridgema.gov

Dated: May 24, 202

## CERTIFICATE OF SERVICE

I hereby certify that on this day of May 24, 2024, the above document was served upon the following counsel of record via ECF:

> Frank N. Gaeta (BBO #561388)
> David Glod (BBO# 676859)
> Rich May, P.C.
> 176 Federal Street, 6th Floor
> Boston, Massachusetts 02110
> (617) 556-3800
> fgaeta@richmaylaw.com
> dglod@richmaylaw.com


/s/ Franziskus Lepionka
Franziskus Lepionka, Esq.