UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALGONQUIN GAS TRANSMISSION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>0.247 ACRES OF LAND, MORE OR LESS,<br>IN LINCOLN, MASSACHUSETTS,<br>THE CITY OF CAMBRIDGE, and THE TOWN OF<br>LINCOLN,<br><br>Defendants. | No. 1:24-cv-11220-ADB |

**[PROPOSED] ORDER CONFIRMING CONDEMNATION OF EASEMENT AND GRANTING PRELIMINARY INJUNCTION AUTHORIZING IMMEDIATE ENTRY**

This matter came before the Court for hearing on June 3, 2024, on the Plaintiff Algonquin Gas Transmission, LLC's ("Algonquin") Motion to Confirm Condemnation of Easement and for a Preliminary Injunction Authorizing Immediate Entry (the "Motion"). The Court, having considered the Motion, the supporting Memorandum and Affidavit, and the arguments and evidence presented at the hearing, finds that the Motion should be granted for the reasons set forth herein.

**JURISDICTION AND VENUE**

1. Algonquin is an interstate natural gas pipeline company that has been authorized by the Federal Energy Regulatory Commission ("FERC") to operate an interstate natural gas pipeline and related facilities located in and adjacent to Route 2/Cambridge Turnpike, Old Colony Road and Trapelo Road in Lincoln and Waltham, MA.

2. Algonquin has been issued a Certificate of Public Convenience and Necessity ("Certificate") on May 22, 1961, authorizing, among other things, the acquisition, operation and

maintenance of approximately 18,752 feet of an existing 16-inch pipeline and related facilities in Waltham and Lincoln for purposes of transporting natural gas in interstate commerce. *See* 25 F.P.C. 1005 (1961). On September 30, 1987, FERC further issued a blanket certificate authorizing Algonquin to perform routine work on its system (the "Blanket Certificate"). *See* 40 FERC ¶ 62,398. The Blanket Certificate authorizes Algonquin to "make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility" pursuant to 18 CFR § 157.208.

    3.    This action is governed by Section 7(h) of the Natural Gas Act ("NGA"), which provides, in pertinent part:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipelines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way... it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, on in the State courts.

15 U.S.C. § 717f(h).

## **RELIEF SOUGHT BY ALGONQUIN**

    4.    Algonquin plans to rebuild its existing meter and regulation station (the "Project") located on a parcel of land in Lincoln and owned by the City of Cambridge over which Algonquin holds permanent easement rights (the "M&R Site"). The M&R Site is included within the system covered by the Certificate and Blanket Certificate.

    5.    Algonquin filed its Condemnation Complaint under the NGA, seeking to condemn a temporary workspace ("TWS") easement adjacent to the M&R Site, to enable Algonquin to safely transport equipment and undertake construction activities to execute the Project. The M&R

Site and TWS are located on a parcel of land owned by the City of Cambridge over which the Town of Lincoln holds a conservation restriction.

6. The boundaries of the TWS easement are depicted on the drawing attached to the First Amended Complaint as <u>Exhibit A</u>.

7. Algonquin also filed the Motion, seeking an order confirming condemnation of the TWS easement and granting Algonquin a preliminary injunction authorizing immediate entry upon the TWS.

8. Federal courts routinely grant natural gas pipeline companies preliminary injunctions allowing immediate entry and possession after analyzing the traditional preliminary injunction standards: (a) likelihood of success on the merits; (b) irreparable harm that would arise in the absence of such relief; (c) harm to the non-moving party; and (d) possible adverse effect on the public interest. *See e.g., In re Maritimes and Northeast Pipeline Litigation*, 1:02-cv-11269, Order on Preliminary Injunction Hearing [Docket Entry 18], (Jul. 25, 2002) (Young, J.) (confirming that natural gas company could "enter upon the land of each of the parties…consistent with the limits as certificated by FERC").

9. The Court finds that Algonquin has satisfied the four requirements for granting injunctive relief. Algonquin has been issued a valid FERC Certificate and that all requirements under the NGA for Algonquin to exercise the right of eminent domain have been satisfied. By virtue of this Order, Algonquin has the right and authority to condemn the TWS Easement.

10. The Court further finds that Algonquin has met its burden of demonstrating a substantial likelihood that immediate and irreparable harm will result if a preliminary injunction is not granted, and if it is not able to obtain immediate entry upon the TWS to begin construction. As demonstrated in the First Amended Complaint and supporting papers, immediate possession of

the TWS is warranted, *inter alia*, to enable Algonquin to safely transport equipment and undertake construction activities to rebuild its existing meter and regulation site located on land adjacent to the TWS.

11. Algonquin has established that it needs to begin the Project on schedule in July 2024 to ensure completion prior to the end of the year. Completing the Project by year-end is critical because the nature of the site will make winter work extremely challenging. Additionally, Algonquin has scheduled pipeline maintenance in 2025, during which the site will be needed to provide an uninterrupted supply of natural gas to Cambridge and surrounding areas. Accordingly, delays in beginning the Project will result in substantial harm to Algonquin and its customers.

12. On balance, the potential harm to Algonquin and the public at large outweighs any harm to the Defendants by granting Algonquin the injunction it seeks. The Defendants will not be harmed if Algonquin is granted immediate access to the TWS Easement rather than awaiting completion of a compensation hearing to obtain possession, as granting immediate possession will not cause the Defendants to lose or compromise any right they have under law. The only issue remaining for this Court to decide is the amount of compensation to be paid, which is not affected by Algonquin obtaining immediate access. Thus, any alleged harm to the Defendants is minimal and is outweighed by the potential harms to Algonquin and others impacted by the delay in construction.

13. It is within FERC's authority to determine whether the Project furthers the public convenience and necessity. The Certificate and Blanket Certificate are evidence that FERC has so determined in connection with Algonquin's operation of the system of which the Project is a critical component, and that determination may not be collaterally attacked in this action.

14.     Accordingly, for the foregoing reasons, the Court finds that Algonquin's Motion to Confirm Condemnation of Easement and for a Preliminary Injunction Authorizing Immediate Entry should be granted.

**IT IS THEREFORE ORDERED:**

A.      That Algonquin is hereby granted immediate right of entry upon the TWS whose boundaries are depicted on the drawing attached to the First Amended Complaint as <u>Exhibit A</u>, in order to commence tree-clearing activities, transport and store its equipment and supplies, and otherwise prepare for and undertake construction activities in connection with rebuilding the existing meter and regulation site, as authorized by FERC under the Certificate and Blanket Certificate.

B.      A hearing on the compensation to be paid for the TWS Easement shall be held on a date to be scheduled by the Court.

SO ORDERED this _____ day of June, 2024.

_____

Burroughs, J.