UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALGONQUIN GAS TRANSMISSION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>0.247 ACRES OF LAND, MORE OR LESS, IN LINCOLN, MASSACHUSETTS, THE CITY OF CAMBRIDGE, and THE TOWN OF LINCOLN,<br><br>Defendants | CASE NO. 1:24-CV-11220-ADB |

**AGREEMENT FOR JUDGMENT**

Now come the parties to the above-captioned case, and hereby stipulate and agree that Judgment shall enter granting the Plaintiff Algonquin Gas Transmission, LLC an immediate temporary right of entry upon the land owned by the Defendant City of Cambridge and which is the subject of a Conservation Restriction held by the Defendant Town of Lincoln, subject to the terms and conditions set forth herein.

**BACKGROUND**

1. Algonquin is an interstate natural gas pipeline company authorized by the Federal Energy Regulatory Commission ("FERC") to operate an interstate natural gas pipeline and related facilities located in and adjacent to Route 2/Cambridge Turnpike, Old Colony Road and Trapelo Road in Lincoln and Waltham, MA.

2. Algonquin has been issued a Certificate of Public Convenience and Necessity ("Certificate") on May 22, 1961, authorizing, among other things, the acquisition, operation, and maintenance of approximately 18,752 feet of an existing 16-inch pipeline and related facilities in

1

Waltham and Lincoln for purposes of transporting natural gas in interstate commerce. *See* 25 F.P.C. 1005 (1961). On September 30, 1987, FERC further issued a blanket certificate authorizing Algonquin to perform routine work on its system (the "Blanket Certificate"). *See* 40 FERC ¶ 62,398. The Blanket Certificate authorizes Algonquin to "make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility" pursuant to 18 CFR § 157.208.

3. Algonquin plans to rebuild its existing meter and regulation station (the "Project") located on a parcel of land in Lincoln and owned by the City of Cambridge over which Algonquin holds permanent easement rights and the Town of Lincoln holds a permanent conservation restriction (the "Conservation Restriction") granted to it by Cambridge.  This parcel of land (the "M&R Site") is included within the system covered by the Certificate and Blanket Certificate.

4. The purpose of Algonquin's project is to provide for the continued safe operation of the M&R Site for the purpose of providing natural gas to the area.

5. The Project requires Algonquin to enter upon, use temporarily, and alter adjacent land, consisting of approximately 0.247 acres, owned by the City and over which the Town holds the Conservation Restriction (the "temporary workspace," or "TWS").

6. The Conservation Restriction provides that the covered premises "contains outstanding qualities … of wetlands, watershed lands, and scenic forested lands, the protection of which in their predominantly natural condition will benefit the public through … the protection of important Zone A watershed lands for the City of Cambridge Reservoir; … the preservation of important forested landscape, … the preservation of important wildlife habitat," and the protection of other natural resources.

7.	As part of the Project, Algonquin intends to use the TWS for the storage and use of motorized equipment and power tools and to pass and repass for the purpose of accessing the M&R Site. To facilitate this use, Algonquin plans to remove mature trees and other natural vegetation, which actions will impact the values protected by the Conservation Restriction.

8.	To enable Algonquin to perform the Project while protecting Cambridge's and Lincoln's interest in the preservation of natural resources within and surrounding the TWS, the Court hereby **ORDERS** as follows:

## RIGHT OF ENTRY

9.	Algonquin, through its employees, agents and contractors, is hereby granted immediate right of entry upon the TWS whose boundaries are depicted on the drawing attached hereto (the "TWS Plan")[1], and to use said area as a temporary work space in connection with rebuilding the existing facilities on the M&R Site, as authorized by FERC under the Certificate and Blanket Certificate, subject to the terms of this Order.

10.	Algonquin shall have the right to enter, pass upon, and remain on the TWS by foot, vehicle, and with equipment, for any and all purposes stated herein and uses incidental or related thereto. Algonquin's right of entry shall include the right to remove trees and vegetation as depicted on the TWS Plan, to transport, use and store its equipment and supplies, and to otherwise prepare for and undertake construction activities in connection with the Project.

11.	Algonquin shall not enter or disturb any area outside of the boundaries of the M&R Site and TWS without the express written permission of the Defendants. Algonquin shall not erect or install any permanent improvements on the TWS. Notwithstanding its authorization to remove trees and vegetation, Algonquin will only remove trees and vegetation that interfere

---

[1] Attached hereto and incorporated as <u>Exhibit A</u>.

with its ability to perform the work on the Project, and it will exercise due care to ensure that there is as little disturbance to the TWS as possible. Algonquin will comply with its Erosion and Sedimentation Control Plan (Revised September 2017) (the "Erosion Plan")[2] during the course of the project work and the Defendants shall be permitted to periodically inspect the erosion control measures to ensure that they are functioning as intended and Algonquin shall make any necessary repairs or replacements to ensure continued and unbroken protection of the watershed, consistent with the Erosion Plan.

12. Prior to completion of the Project, any entry by Defendants upon the TWS will require reasonable prior notice to Algonquin, accompaniment by an Algonquin representative, and compliance with Algonquin job site safety protocols including appropriate personal protective equipment.

13. Algonquin represents and warrants that it will not release or permit the release or threat of release of oil or any other hazardous material, hazardous waste, or hazardous substance as those terms are defined by applicable law.  If such release is discovered during the course of the Project or the Restoration Work (as hereinafter defined) or at any time thereafter, Algonquin shall be responsible for conducting any environmental response and remediation actions required by law unless it can demonstrate that neither Algonquin nor its officers, employees, agents, volunteers, vendors, including but not limited to contractors, successors, and assigns are responsible parties.

14. Algonquin accepts the TWS in "as is" condition and it acknowledges that the Defendants have not made any representations or warranties regarding the fitness of the TWS for the intended use and any such representations or warranties are expressly denied.   No

---

[2] Attached hereto and incorporated as Exhibit B.

representation is made as to the operation, presence, or adequacy of any utilities for the intended use, including but not limited to a supply of water for the restoration requirements of this Order, and the Defendants have no obligation to supply any such utilities. Nonetheless, Algonquin explicitly acknowledges it will be required to provide and supply the water to the TWS needed to comply with its restoration obligations as detailed herein and in the incorporated restoration plan.

15. Algonquin shall exercise direct supervision and control of all activities occurring on the TWS, including activities operated by third-parties, to ensure that activities are operated in a safe and appropriate manner.

16. Algonquin shall be solely responsible for ensuring compliance with all applicable laws, statutes, ordinances, regulations, permits, licenses, orders, and requirements of governmental authorities and with all requirements of its insurance policies.

17. Algonquin agrees that it shall use and occupy the TWS at its own risk, and the Defendants shall not be liable for any injury or death to any persons entering the TWS pursuant to this Order, or for any loss or damage to vehicles, equipment, structures, or other personal property of any nature whatsoever of Algonquin, or of its employees, contractors, or invitees.

18. Algonquin agrees, on behalf of itself, its officers, employees, agents, volunteers, vendors, including but not limited to contractors, successors, and assigns, to release, indemnify, defend, and hold harmless the Defendants and their employees, officers, boards, commissions, and agents, against any claim by any person for any injury or death to persons or loss or damage to or diminution in value of any property caused by Algonquin's acts or omissions; provided, however, that this indemnification right does not apply to the alteration or diminution in value of the TWS as a result of the Project, which the Restoration Work is explicitly intended to redress.

19. Algonquin shall keep in force, at its sole cost and expense, during the full term of this Order, policies of insurance or self-insurance for the purpose of insuring against all claims and demands for personal injury or damage to or diminution in value of any property which may be claimed to have occurred upon the TWS or as a result of Project and/or the Restoration Work and naming the City of Cambridge and Town of Lincoln as named insureds.

**TERM**

20. Algonquin's right of entry shall commence upon entry of this Order and it shall expire upon completion of the Project and the Restoration Work.

21. Algonquin's right of entry is limited to the purposes set forth herein and it is not authorized by this Order to enter, remain upon, or use the TWS for any other purpose or for any period of time after the expiration of this Order.

**RESTORATION**

22. Upon conclusion of the Project, Algonquin shall promptly remove all its equipment and materials and restore the TWS in accordance with the restoration requirements set forth herein.

23. The TWS shall be restored by Algonquin at its sole cost and expense in accordance with and to the specifications of the Restoration Plan[3] (hereinafter referred to the "Restoration Work"). The Restoration Work shall commence as soon as practicable after the completion of the Project but no later than the commencement schedule detailed in the Restoration Plan and as approved by the Defendants; provided, however, that if the Restoration Work cannot begin promptly after the completion of the Project as a result of weather conditions, Algonquin shall implement, in a good and workmanlike manner and in compliance with the

---

[3] Attached hereto and incorporated as Exhibit C.

Erosion Plan, temporary measures designed to prevent erosion and to ensure that the TWS does not degrade or pose a threat to the values of the Conservation Restriction prior to the commencement and/or completion of the Restoration Work.

24. The Restoration Work shall be completed in six (6) phases. The first phase will comprise restoration of the TWS through land grading and plantings as set forth in the Restoration Plan. The first phase shall be completed no later than the end of the first full growing season after conclusion of the Project.

25. During the first phase and until completion of all six (6) phases, Algonquin shall monitor, water, and maintain the TWS to protect all plantings and it will replace any trees and/or shrubs that are not likely to survive the three-year monitoring period and such other maintenance as is necessary to ensure the intent of the Restoration Work and this Order. Algonquin's maintenance requirements shall include but not be limited to watering, removal of weeds and other invasive vegetation, and trimming and pruning as necessary.

26. The Restoration Work will be performed by Algonquin and/or its contractors and subcontractors, in a good, diligent, and workmanlike manner in accordance with the plans and specifications and in accordance with generally accepted professional standards for the landscape industry.

27. The next phases consist of the monitoring and replacement of failed plantings with inspections by Algonquin and the Defendants on an as needed basis and with progress reports issued on October 31 of Year 1 of the Restoration Work (Phase 2); June 30 of Year 2 of the Restoration Work (Phase 3), October 31 of Year 2 of the Restoration Work (Phase 4), June 30 of Year 3 of the Restoration Work (Phase 5), and October 31 of Year 3 of the Restoration Work (Phase 6).

28.     Upon the completion of each phase of Restoration Work, the Defendants shall have an opportunity to inspect the Restoration Work, with any such inspection to be performed within ten business days after Algonquin provides notice of completion of such phase, and they shall certify that the Restoration Work has been completed in a good and workmanlike manner in accordance with the Restoration Plan and specifications and in accordance with generally accepted professional industry standards including generally accepted plant survival standards. If it is determined that the Restoration Work has not been completed to the applicable standards, the Defendants will provide Algonquin with written notice of the deficiencies and a time frame for completion of the required work.  Phases will not be considered complete until deficiencies are corrected.

29.     At reasonable times, the Defendants shall have an opportunity to inspect the Restoration Work.  To fulfill their rights under this Order, the Defendants may retain, at their own expense, the services of an outside consultant who can assist the Defendants in analyzing the Restoration Work. Such assistance may include, but not be limited to reviewing all plans, specifications, and submittals, taking soil samples, conducting site inspections, preparing reports, and meeting with the parties. Algonquin acknowledges and agrees that the choice of consultant shall be within the sole discretion of the Defendants.

## MISCELLANEOUS

30.     For the avoidance of doubt, the Restoration Work shall be the sole compensation provided by Algonquin to Cambridge and Lincoln in connection with Algonquin's use of the TWS.

31.     This Order shall not be construed as creating or vesting in Algonquin any estate in the TWS.

32. This Order may be modified in writing, duly executed by all parties. In the event that the parties cannot agree upon a requested modification or if there is any dispute concerning the interpretation of this Order, they may appeal to the Court for any such relief as may be necessary and the Order of the Court with respect to such requested modification or interpretation shall be final. Any violations of this Order may be enforced in Contempt and the Court may award such relief to the complaining party or parties as it deems just and equitable, including but not limited to requiring the offending party to pay the other party or parties' attorneys' fees.

33. The parties hereto agree and recognize that this Agreement for Judgment is a compromise of disputed claims, and that nothing in this Agreement for Judgment is to be construed in any way to be an admission of liability or wrongdoing of any kind by either party, and the parties each deny any such liability or wrongdoing. By agreeing to entry of this Order, the parties agree that all rights of appeal are waived.

34. The parties further state that they have carefully read the foregoing, that they have had an opportunity to review it with counsel of their choosing and they fully understand the contents hereof, and that the signatories hereto are duly authorized to sign this Agreement for Judgment on behalf of the respective parties and that each signs and executes this Agreement for Judgment as their free act and deed.

Respectfully submitted,

| ALGONQUIN GAS TRANSMISSION, LLC | THE CITY OF CAMBRIDGE |
|---|---|
| By its attorneys, | By its attorney, |
| /s/ *David Glod*<br>Frank N. Gaeta (BBO No. 561388)<br>David Glod (BBO No. 676859<br>RICH MAY, P.C.<br>176 Federal Street, 6th Floor<br>Boston, MA 02110<br>(617) 556-3800<br>fgaeta@richmaylaw.com<br>dglod@richmaylaw.com | /s/ *Franziskus Lepionka*<br>Franziskus Lepionka (BBO No. 664049)<br>City of Cambridge Law Department<br>City Hall, 795 Massachusetts Avenue<br>Cambridge, MA 02139<br>(617) 349-4121<br>flepionka@cambridgema.gov |

TOWN OF LINCOLN

By its attorney,

/s/ *Gregg J. Corbo*
Gregg J. Corbo (BBO No. 641459)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007
gcorbo@k-plaw.com

SO ORDERED.

_____

Burroughs, J.

DATED: June _____, 2024